**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 08-CR-18-TCK |
| | ) | (Civil Case 09-CV-523-TCK-FHM) |
| ANTHONY DEVON ROSE, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Before the Court are Defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Doc. 43) ("§ 2255 Motion"); the United States' response (Doc. 48); and the affidavit of Defendant's trial counsel Gregg Graves ("Graves") ("Graves Affidavit") (Doc. 49). Defendant did not file a reply.

**I.     Background**

On March 4, 2008, Defendant was charged by Superseding Indictment with: (1) possession with intent to distribute five grams or more of cocaine base (Count 1); (2) possession with intent to distribute a mixture and substance containing a detectable amount of Ecstasy (Count 2); (3) possession of a firearm in furtherance of a drug trafficking crime (Count 3); and (4) possession of a firearm and ammunition after former conviction of a felony (Count 4).

On April 30, 2008, Defendant pled guilty to Counts 1 and 2 before Magistrate Judge Sam A. Joyner. The Plea Agreement contains the following appellate and post-conviction waiver ("Waiver"):

> In consideration of the promises and concessions made by the United States in this Plea Agreement, the defendant knowingly and voluntarily agrees to the following terms:
> . . .

> d. The defendant waives the right to collaterally attack the conviction and sentence pursuant to 28 U.S.C. § 2255, *except for claims based on ineffective assistance of counsel which challenge the validity of the guilty plea or this waiver* . . . .[1]

(*See* Doc. 32-2 at 3 (emphasis and footnote added).)

On August 26, 2008, the Court sentenced Defendant to 188 months on each count, to run concurrently with the other. This sentence was at the bottom of the sentencing range for offense level 31, criminal history category VI, which is 188-235 months. This offense level and criminal history category were based upon application of the career offender provision set forth at USSG § 4B1.1(a) and (b), which provide:

> (a) A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) *the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense*.
> (b) Except as provided in subsection (c), if the offense level for a career offender from the table in this subsection is greater than the offense level otherwise applicable, the offense level from the table in this subsection shall apply. *A career offender's criminal history category in every case under this subsection shall be Category VI*.

USSG § 4B1.1 (emphasis added). Absent application of USSG § 4B1.1, Defendant would have had a total offense level of 23 and a criminal history category of V, with a sentencing range of 84-105 months.

---

[1] The Waiver incorporates and is consistent with Tenth Circuit law that "a plea agreement waiver of postconviction rights does not waive the right to bring a § 2255 petition based on ineffective assistance of counsel claims challenging the validity of the plea or the waiver." *United States v. Cockerham*, 237 F.3d 1179, 1187 (10th Cir. 2001). This is known in the Tenth Circuit as the *Cockerham* exception. *See United States v. Masters*, 317 Fed. Appx. 750, 755 (10th Cir. 2009) (referring to *Cockerham* exception to general enforceability of collateral review waivers).

According to the Presentence Investigation Report ("PSR"), Defendant was arrested for one of the felony drug convictions supporting application of USSG § 4B1.1 on September 11, 2001, when Defendant was nineteen years old ("First Qualifying Offense"). This case was Washington County District Court Case Number CF-01-513. Defendant was arrested for the second felony drug conviction supporting application of USSG § 4B1.1 on December 13, 2002, when Defendant was twenty years old ("Second Qualifying Offense") (collectively "qualifying offenses"). On March 13, 2003, Defendant was sentenced to both of the qualifying offenses, as well as several other outstanding state charges. Defendant received concurrent sentences for the qualifying offenses.

On August 17, 2009, Defendant filed the § 2255 Motion before the Court. Construed liberally, Defendant's brief in support of the § 2255 Motion seeks post-conviction relief on the following grounds: (1) Graves was ineffective by failing to properly advise Defendant that his sentence would be enhanced by USSG § 4B1.1 ("Graves' pre-plea advice"); (2) Graves was ineffective by failing to object to the PSR's inclusion of the career offender enhancement or argue against application of the enhancement during the sentencing hearing ("Graves' sentencing conduct"); and (3) the Court erred by applying the guidelines career offender enhancement ("Court's sentence").

**II. Waiver**

"[A] waiver of collateral attack rights brought under § 2255 is generally enforceable where the waiver is expressly stated in the plea agreement and where both the plea and the waiver were knowingly and voluntarily made." *Cockerham*, 237 F.3d at 1183. The Tenth Circuit has outlined a three-prong test for determining whether a defendant has waived appellate rights in a plea agreement, *see United States v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004), and has extended such

analysis to waivers of collateral review rights, *see United States v. Wales*, No. 05-3445, 2006 WL 950655, at *2 (10th Cir. April 13, 2006). A defendant's waiver of collateral review rights is binding if: (1) the scope of the waiver covers the collateral attack; (2) the waiver was knowing and voluntary; and (3) enforcement of the waiver would not result in a miscarriage of justice. *See Hahn*, 359 F.3d at 1325; *Wales*, 2006 WL 950655 at *2 (applying *Hahn* in context of waiver of collateral review rights); *United States v. Jackson*, No. 05-CR-58-C.E., 2007 WL 1690963, at *4 (N.D. Okla. June 11, 2007) (same). The Court will address each specific ground of collateral attack to determine if it is waived.

### A. Graves' Pre-Plea Advice

As quoted above, the Waiver excepts claims based on ineffective assistance of counsel that challenge the validity of the guilty plea or waiver. With respect to Graves' pre-plea advice, Defendant contends that Graves was ineffective by failing to properly research Defendant's criminal history and advise him of the potential application of USSG § 4B1.1. This constitutes an attack on the validity of the guilty plea itself and is therefore outside the scope of the Waiver. *See United States v. White*, 386 Fed. Appx. 787, 792 (10th Cir. 2010) (holding that a defendant's allegation that counsel gave inaccurate pre-plea advice regarding his potential sentence attacked the validity of the plea and was outside the scope of a waiver of post-conviction rights). Because this collateral attack is outside the scope of the Waiver, the Court need not address the second and third requirements for a valid waiver. The substantive question of whether Graves' pre-plea advice constitutes ineffective assistance of counsel is discussed in Part III.

B.     Graves' Sentencing Conduct

Defendant alleges that Graves failed to properly advise him during post-plea, pre-sentencing interviews, object to the PSR, or make arguments during the sentencing hearing regarding application of § 4B1.1.  These arguments do not attack the validity of the waiver or plea agreement.  Instead, they attack decisions made by Graves well after the plea was entered, and Defendant has not directly tied these sentencing failures to his decision to plead guilty.  *See Masters*, 317 Fed. Appx. at 755 (explaining that, in order for an ineffective assistance claim to challenge the validity of the guilty plea or the waiver itself, the particular ineffective assistance argument must "bear more than a tangential relationship to the plea agreement waiver" and that a defendant must "directly tie" his attorney's conduct in other areas of the criminal proceedings to the advice the attorney provided him in connection with his decision to plead guilty).  *Id.*  Thus, this collateral attack is within the scope of the waiver.

The next question is whether the waiver was knowing and voluntary.  When deciding whether a waiver is knowing and voluntary, a court looks to two factors: (1) whether the language of the plea agreement states that the defendant entered the agreement knowingly and voluntarily, and (2) the adequacy of the Rule 11 plea colloquy.  *Hahn*, 359 F.3d at 1325.  A defendant bears the burden of showing that he did not knowingly and voluntarily enter into the plea agreement. *Id.* at 1329.

Upon review of the Rule 11 colloquy, the plea agreement, and the petition to enter a plea of guilty, the Court finds that the Waiver was entered knowingly and voluntarily for several reasons. First, the plea agreement and the petition to enter a plea of guilty are both signed by Defendant and both stated that Defendant entered the plea agreement knowingly and voluntarily. Second, Judge

Joyner conducted a thorough Rule 11 plea colloquy before accepting Defendant's plea. Judge Joyner addressed Defendant personally, ensured that the plea was voluntary, and ensured that the plea did not result from force, threats, or promises other than those contained in the plea agreement. Judge Joyner also reviewed the Waiver with Defendant, and Defendant indicated that he understood the Waiver. *See Jackson*, 2007 WL 1690963, at *6 (analyzing similar factors in determining whether a waiver was entered knowingly and voluntarily).

The next inquiry is whether waiver of this particular collateral attack – namely, Graves' ineffective assistance during sentencing proceedings – will result in a miscarriage of justice. An appellate or post-conviction waiver results in a miscarriage of justice only (1) where the district court relied on an impermissible factor such as race, (2) where ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid, (3) where the sentence exceeds the statutory maximum, or (4) where the waiver is otherwise unlawful. *See Hahn*, 359 F.3d at 1327. With respect to the fourth type, a waiver is "otherwise unlawful" if the error seriously affects a defendant's "substantial rights." *See id.* at 1327, 1329. To affect a defendant's "substantial rights," the error must seriously affect the fairness, integrity, or public reputation of judicial proceedings. *See id.*

Waiver of Defendant's post-conviction attacks on Graves' alleged failures related to sentencing will not result in any miscarriage of justice. The first three examples of possible miscarriages of justice identified in *Hahn* are not relevant here, and the only question is whether Graves' failures during sentencing were the type of errors that seriously affected the fairness, integrity, or public reputation of judicial proceedings.

Defendant argues that Graves should have objected to the PSR because Amendment 709 to the guidelines, which became effective November 1, 2007, prohibits separate counting of his First Qualifying Conviction and his Second Qualifying Conviction. However, Defendant's brief reflects a misunderstanding of Amendment 709. Amendment 709 "addresses the counting of multiple prior sentences" for purposes of USSG § 4A1.2(a)(2).[2] Amendment 709 provides:

> Under the amendment, the initial inquiry will be whether the prior sentences were for offenses that were separated by an intervening arrest (i.e., the defendant was arrested for the first offense prior to committing the second offense). If so, they are to be considered separate sentences, counted separately, and no further inquiry is required.
>
> If the prior sentences were for offenses that were not separated by an intervening arrest, the sentences are to be counted as separate sentences unless the sentences (1) were for the offenses that were named in the same charging document, or (2) were imposed on the same day. In either of these situations, they are treated as a single sentence.

USSG supp. to app. C, Amendment 709 at 238. There is no question that Defendant was arrested for the First Qualifying Conviction on September 11, 2001, which is prior to his arrest for the Second Qualifying Conviction on or around December 13, 2002. Thus, they are considered separate sentences, and no further inquiry is required. Defendant may be confused because the sentencing proceedings for the First Qualifying Conviction and the Second Qualifying Conviction occurred on the same date – March 13, 2003. However, this fact is only relevant in cases involving offenses that are not separated by an intervening arrest. *See Ellis*, 525 F.3d at 965 (explaining that a defendant's escape conviction was well after his robbery conviction and it was therefore irrelevant that the

---

[2] USSG § 4A1.1(a)(2) is relevant because it governs determination of whether a defendant's prior convictions qualify him as a career offender under § 4B1.1. *See* USSG § 4B1.2(c)(2) ("[T]he sentences for at least two of the aforementioned felony convictions are counted separately under the provisions of § 4A1.1(a), (b), or (c)."); *United States v. Ellis*, 525 F.3d 960, 965 (10th Cir. 2008) (explaining relation between two provisions).

defendant was sentenced for each on the same date). Thus, there is no possibility that Graves' failure to (1) explain application of § 4B1.1 to Defendant during post-pled, pre-sentencing interviews, (2) object to the PSR's application of § 4B1.1, or (3) otherwise challenge application of § 4B1.1 during the sentencing hearing resulted in a miscarriage of justice.[3]

In sum, all three requirements for valid waiver are satisfied, and Defendant's post-conviction attack on Graves' sentencing conduct is barred by the Waiver.

### C. Court's Sentence

A collateral attack on the Court's application of § 4B1.1 is clearly within the scope of the Waiver because it is not an ineffective assistance of counsel claim that attacks the validity of the plea or waiver. For the same reasons explained above in Part II.B, the Court concludes that the Waiver was knowing and voluntary and that waiver will not result in any miscarriage of justice. Accordingly, the collateral attack on the Court's application of § 4B1.1 is also waived.

## IV. Ineffective Assistance Claim Based on Graves' Pre-Plea Advice

The two-part standard governing ineffective assistance of counsel claims, first set forth in *Strickland v. Washingston*, 466 U.S. 668 (1984), applies to ineffective assistance claims arising out of the plea process. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985) ("[T]he two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel.");

---

[3] If Defendant had failed to object to a clearly inapplicable career offender enhancement, the Court would have to more carefully consider whether this resulted in manifest injustice. *See United States v. Horey*, 333 F.3d 1185 (10th Cir. 2003) (holding that counsel's failure to object to an "undisputedly inapplicable career offender enhancement" constituted ineffective assistance and remanding for vacation of prior sentence and resentencing). Here, however, the career offender enhancement was properly applied, and counsel's only possibly deficient performance was giving inaccurate pre-plea advice.

8

*Williams v. Jones*, 571 F.3d 1086, 1090 n.3 (10th Cir. 2009) (noting that same test applies whether allegedly deficient performance results in acceptance or denial of a plea agreement). In order to prevail under this standard, Defendant must show that (1) Graves' performance – namely, advising Defendant that the guideline career offender enhancement would not apply – fell below an objective standard of reasonableness; and (2) Graves' performance was so prejudicial "there is a reasonable probability that, but for his unprofessional errors, the result of the proceeding would have been different." *See United States v. Carter*, 130 F.3d 1432, 1442 (10th Cir. 1997).

Analysis of the first prong does not change in the context of a guilty plea. *See Hill*, 474 U.S. at 59. A defendant establishes the first prong by showing that his counsel performed below the level expected from a reasonably competent attorney in criminal cases. *Strickland*, 466 U.S. at 687-88. A court must judge counsel's conduct on the facts of each particular case and as of the time of counsel's allegedly deficient conduct. *Id.* at 690. A court's review of counsel's performance is highly deferential. *Id.* at 689. To establish the second prong, in the context of a guilty plea, a defendant must show that there is a reasonable probability that, but for the alleged error, the defendant "would not have pleaded guilty and would have insisted on going to trial." *See id.* (explaining prejudice prong in context of allegation that ineffective assistance led to guilty plea).

### A. Deficient Performance

Under Tenth Circuit law, "[a] miscalculation or erroneous sentence estimation by defense counsel is not a constitutionally deficient performance rising to the level of ineffective assistance of counsel." *United States v. Gordon*, 4 F.3d at 1567, 1570 (10th Cir. 1993) (holding that defendant failed to show deficient performance where counsel had given defendant his opinion that a sentence would not include a relevant conduct adjustment, but defendant was later assessed a relevant conduct

9

adjustment); *see also United States v. Wash.*, 619 F.3d 1252, 1257 (10th Cir. 2010) (explaining holding in *Gordon* and categorizing it as a case involving a miscalculation of a possible guidelines sentence and a "failure to predict accurately" the sentence ultimately given). However, the Tenth Circuit recently clarified that counsel is deficient if he fails "to understand the basic structure and mechanics of the sentencing guidelines and [is] therefore incapable of helping the defendant to make reasonably informed decisions throughout the criminal process." *See Wash.*, 619 F.3d at 1253 (holding that "counsel's failure to understand the basic mechanics of the sentencing guidelines and, in particular, his failure to advise [the defendant] regarding the impact of relevant conduct on his potential sentence prior to meeting with the probation officer, amounted to constitutionally deficient performance under [*Strickland*]") (reasoning that "[t]he instant case is not one of misinformation by counsel; rather, the record reflects that [the defendant] was never *in any way* informed about the applicability or impact of relevant conduct because his counsel did not understand its significance in the sentencing scheme"). Current Tenth Circuit law appears to be that (1) counsel *is not* deficient if he generally understands the guidelines but makes a mistake in applying them while giving pre-plea or pre-interview advice, but (2) counsel *is* deficient if he fails to understand the guidelines and is therefore wholly incapable of representing the defendant at any stage of the proceedings. In this Court's experience, the former is a frequent occurrence, due to the complex and technical nature of the guidelines. The latter is a rare occurrence, due to the age and prevalence of the guidelines.[4]

Here, Graves admits that he gave erroneous pre-plea advice by advising Defendant of his opinion that (1) Defendant's relevant prior convictions would not count as separate convictions, and

---

[4] Despite the fact that *Washington* was decided in 2010, it involved conduct by counsel occurring in 1991, at a time when the guidelines were relatively new.

(2) Defendant would not qualify as a guidelines career offender. This conduct reflects a failure to investigate or confirm facts surrounding Defendant's prior convictions and does not reflect a lack of basic understanding of the guidelines. Graves and Defendant agree that, during pre-plea meetings, they discussed USSG § 4B1.1. Graves simply gave a mistaken and erroneous opinion that such guideline enhancement would not apply. Such mistake was based on the information Graves had at the time regarding the prior convictions. This conduct falls into the category of an "erroneous sentence estimation," which the Tenth Circuit has held does not constitute deficient performance. *See Gordon*, 4 F.3d at 1570. Therefore, Defendant has failed to demonstrate that Graves' performance was deficient.

### B. Prejudice

Defendant has also failed to show that, but for Graves' erroneous pre-plea advice, he would have elected to proceed to trial. In a case involving similar facts, the Tenth Circuit found no prejudice stemming from counsel's erroneous pre-plea advice – namely, that relevant conduct would not increase the defendant's sentence. *See Gordon*, 4 F.3d at 1571. The court found no prejudice because the district court explained, prior to accepting the plea, that (1) "the court's final calculation of Defendant's sentence may differ from any calculation made by his attorney," and (2) the court can and will consider all available information including factual data relating to any counts dismissed or about to be dismissed." *See Gordon*, 4 F.3d at 1571; *see also Wash.*, 619 F.3d at 1259 n.4 (citing *Gordon* as holding that "counsel's miscalculation was not prejudicial because the court thereafter explained the impact of relevant conduct at the plea hearing and [the defendant] pled guilty after being so informed").

The facts here are similar. Prior to accepting the plea, Judge Joyner asked Defendant if he understood that "the Court will not be able to determine the sentence for your cases until after the presentence report has been completed," and the Defendant stated "yes." (*See* Doc. 50-1 at 6.) More importantly, the proceeding included specific discussion of the possibility of the guidelines career offender enhancement.

> The Court: . . . . I'm going to ask the District Attorney's Office as to whether or not there are sentencing factors or aggravating factors which you would like to inquire about?
>
> Ms. Reincke: No, your honor. The – Mr. Graves and I talked about it and he's indicated he has talked to his client about it. Mr. Rose has at least three prior convictions that would qualify him for an enhancement under 21 [U.S.C. § ] 851. Part of the Plea Agreement is the Government does not seek an enhancement of a minimum mandatory sentence; however, this would not preclude him from qualifying for a career offender if, in fact, those three convictions are qualifying convictions, which could otherwise enhance his sentence because of the addictions [sic].[5] Because of the criminal history points from those convictions, he's already a Criminal History 6,[6] so I don't believe that would be a problem, but an issue of being a career offender is out there.
>
> The Court. Okay. Do you understand what the U.S. Attorney is talking about?
>
> The Defendant: Yes sir.
>
> The Court: Have you talked with your lawyer about those issues?
>
> The Defendant: Yes.

(*Id.* at 10-11.) At the time Defendant pled guilty, Defendant was expressly informed that the career offender enhancement was "out there" and that the Court could not predict his sentence until the presentence report was prepared. Although his attorney advised him such enhancement would not apply, Defendant was well aware of the possibility of enhancement and that the Court retained the

---

[5] It appears this should have been transcribed as "convictions."

[6] Defendant was actually a criminal history category 5.

12

ultimate discretion to sentence Defendant. This appears to be sufficient under Tenth Circuit law to defeat the second *Strickland* prong.

At least one circuit considers four specific factors in determining whether counsel's failure to properly advise a defendant of a career offender enhancement prejudiced a defendant's decision to enter a guilty plea: (1) whether the district court gave an admonition during the plea hearing that a defendant should not rely on sentencing predictions; (2) whether the plea agreement held out a possibility of a substantial assistance departure; (3) whether the defendant would have faced a substantially higher guidelines range than that ultimately imposed; and (4) the strength of the defenses he would have had against the charges had he gone to trial. *In re Sealed Case*, 488 F.3d 1011, 1016-20 (D.C. Cir. 2007).[7]

Consideration of these factors also supports a finding that Defendant was not prejudiced by Graves' erroneous advice. First, the Court has already found that Judge Joyner gave a sufficient admonition regarding any sentencing predictions by counsel. Second, the Plea Agreement contemplates a possible 5K1.1 downward departure. Although the United States did not ultimately seek such a departure, the Plea Agreement "leaves no doubt that the possibility of a sentence below the Guidelines range was a factor" in Defendant's decision to plea, and this factor would have been relevant even if Defendant had been correctly advised regarding the career offender enhancement. *See Sealed Case*, 488 F.3d at 1017. Third, had he proceeded to trial and been convicted of all four counts, the Court's calculations indicate that he would have faced a guidelines range of 262-327

---

[7] Such factors were identified on appeal of a denial to withdraw a guilty plea; however, such factors were part of the Court's *Strickland* prejudice analysis and are applicable here.

months. This is significantly greater than the 188 months sentence Defendant received pursuant to his plea, even with the § 4B1.1 enhancement.

Finally, Defendant has not presented any arguments or explanation as to how he would have defended the charges to which he pled guilty or the two additional dismissed counts. The drugs and firearm forming the basis of all charges were found in Defendant's apartment, which he shared with his girlfriend. Defendant has not indicated that the drugs and/or firearm belonged to his girlfriend or someone else, and Defendant has failed to show that he would have been able to proffer a defense to the charges. *See id.* at 1019 (fourth factor weighed against finding of prejudice because, *inter alia*, defendant failed to explain possible defenses and chances of conviction were substantial).

Considering *Gordon* and other pertinent factors identified in case law, the Court concludes that Defendant has failed to make the requisite showing of prejudice to satisfy the second *Strickland* prong. Specifically, Defendant has failed to show that, had Graves accurately advised him regarding the enhancement, he would have rejected the plea deal, gone to trial on all four counts, and faced the possibility of a much larger sentence than that he received even with the enhancement.

**IV.    Certificate of Appealability**

Rule 11 of the *Rules Governing Section 2255 Cases in the United States District Courts* instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing." A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further

proceedings. *Slack v. McDaniel*, 529 U.S. 473 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)). In addition, when the Court's ruling is based on procedural grounds, a petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

In this case, the Court concludes that a certificate of appealability should not issue. Nothing suggests that the Court's ruling is debatable or incorrect. The record is devoid of any authority suggesting that the Tenth Circuit Court of Appeals would resolve the issues in this case differently. A certificate of appealability shall be denied.

V.  **Conclusion**

Defendant's § 2255 Motion (Doc. 43) is DENIED. A separate judgment will be entered.

**DATED THIS 24th day of August, 2011.**

*[signature: Terence Kern]*

**TERENCE KERN**
**United States District Judge**